IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**JAMES H. PIERCE, III,**

    **Plaintiff,**

v.                                                    **Civil Action No. 2:13-cv-02455**

**CAROLYN W. COLVIN,**
**ACTING COMMISSIONER, SOCIAL SECURITY,**

    **Defendant.**

### MEMORANDUM OPINION

This is an action seeking review of the final decision of the Commissioner of Social Security denying Plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  Presently pending before the Court are Plaintiff's Brief in Support of Judgment (ECF No. 13) and Defendant's Brief in Support of Defendant's Decision (ECF No. 14).  Both parties have consented to a decision by the United States Magistrate Judge.

Claimant, James H. Pierce, III, filed an application for Social Security Disability Insurance Benefits and Supplemental Security Income benefits on July 7, 2009, alleging disability beginning March 29, 2008.  Claimant asserts experiencing the following conditions:  two (2) bulging discs in back causing pain in his hip and his legs, arthritis in his lower back and allergies (Tr. at 187).  The claims were denied initially and upon reconsideration.  Thereafter, Claimant filed a written request for hearing on September 8, 2010.  Claimant appeared via video in Beckley, West Virginia, at an administrative

1

hearing held by an Administrative Law Judge in Charleston, West Virginia, on July 27, 2011. A decision denying the claims was issued on August 3, 2011. Claimant's request for review by the Appeals Council was denied on December 14, 2012. Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2013). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*,

658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2013). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date (Tr. at 37). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of chronic lumbosacral strain with disc bulges, gastroesophageal reflux disease, history of hepatitis C in remission, history of substance abuse and bipolar II disorder. (*Id.*) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any Listings in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. at 38). The ALJ then found that Claimant has a residual functional capacity (RFC) for unskilled sedentary work, reduced by nonexertional limitations[1] (Tr. at 30). The ALJ found that Claimant is unable to perform any past relevant work (Tr. at 45). The ALJ concluded that Claimant could perform unskilled sedentary exertional

---

[1] Claimant can lift and carry 10 pounds occasionally and five pounds frequently. Claimant can stand or walk a total of two hours during an eight hour workday. He can sit a total of six hours during an eight hour workday. Claimant can never climb ladders, ropes or scaffolds. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. Claimant must avoid concentrated exposure to extreme cold, extreme heat and workplace hazards. He is limited to performing simple, routine and repetitive tasks. Claimant is limited to only occasional contact with co-workers and the general public (Tr. at 39).

3

jobs such as hand packer, product inspector and assembler (Tr. at 46). On this basis, Claimant's applications were denied (Tr. at 47).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record, which includes medical records, reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on May 31, 1975. Claimant has a general equivalency diploma and work experience as a construction equipment operator. Claimant reported he stopped working on April 30, 2007, because the company he "was working for ran out of work" (Tr. at 187). Claimant asserts that he became disabled on March 29, 2008, due to

4

chronic lumbosacral strain with disc bulges, gastroesophageal reflux disease, history of hepatitis C in remission, history of substance abuse and bipolar disorder (Tr. at 149). Claimant argues he injured his lower back from a fall on March 29, 2008 (Tr. at 299).

Claimant asserts the ALJ erred when he did not find that the impairments resulting from chronic lumbosacral strain with disc bulges, gastroesophageal reflux disease, history of hepatitis C in remission, history of substance abuse and bipolar disorder imposed effects on Claimant's functional capabilities to preclude him from performing any sustained, substantial gainful activity (ECF No. 13). Defendant asserts substantial evidence supports the ALJ's finding that the opinion of disabling limitations, by Wadih Kabbara, M.D., Diplomate Board of Internal Medicine, was entitled to little weight. Defendant argues that substantial evidence supports the ALJ's finding that Claimant's subjective complaints of disabling symptoms and limitations were not fully credible (ECF No. 14).

Evaluating Mental Impairments

The five-step sequential evaluation process applies to the evaluation of both physical and mental impairments. 20 C.F.R. § 416.920a (a) (2013); 20 C.F.R. § 404.1520a (a) (2013). In addition, when evaluating the severity of mental impairments, the Social Security Administration implements a "special technique," outlined at 20 C.F.R. §§ 404.1520a and 416.920a. *Id.* First, symptoms, signs and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment. §§ 404.1520a(b)(1) and 416.920a(b)(1) (2012). Second, if the ALJ determines that an impairment(s) exists, the ALJ must specify in his decision the symptoms, signs and laboratory findings that substantiate the presence of the impairment(s). §§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e) (2013). Third, the

5

ALJ then must rate the degree of functional limitation resulting from the impairment(s). §§ 404.1520a(b)(2) and 416.920a(b)(2) (2013). Functional limitation is rated with respect to four broad areas (activities of daily living, social functioning, concentration, persistence or pace and episodes of decompensation). §§ 404.1520a(c)(3) and 416.920a(c)(3) (2013). The first three areas are rated on a five-point scale: None, mild, moderate, marked and extreme. The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4)(2013). A rating of "none" or "mild" in the first three areas and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe," unless the evidence indicates otherwise. §§ 404.1520a(d)(1) and 416.920a(d)(1) (2013). Fourth, if a mental impairment is "severe," the ALJ will determine if it meets or is equivalent in severity to a mental disorder listed in Appendix 1. §§ 404.1520a(d)(2) and 416.920a(d)(2) (2013). Fifth, if a mental impairment is "severe" but does not meet the criteria in the Listings, the ALJ will assess the claimant's residual functional capacity. §§ 404.1520a(d)(3) and 416.920a(d)(3) (2013). The ALJ incorporates the findings derived from the analysis in his decision:

> The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

§§ 404.1520a(e)(2) and 416.920a(e)(2) (2013).

The ALJ held that Claimant's mental impairments, considered singly and in combination, do not meet or medically equal Listings 12.04 (Affective Disorders) and 12.09 (Substance Addiction Disorder) (Tr. at 38). *See,* 20 C.F.R. 404 Subpart P,

Appendix 1.  To demonstrate a mental impairment under the Listings, Claimant's mental impairments must result in at least two of the following:

- Marked difficulties in maintaining social functioning;
- Marked restriction in activities of daily living;
- Marked difficulties in maintaining concentration, persistence or pace; or
- Repeated episodes of decompensation, each of extended duration.

A marked limitation means more than moderate but less than extreme.  P. Polizos, M.D., performed a Psychiatric Review of Claimant on November 30, 2009 (Tr. at 347).  Dr. Pilozos found under Listing 12.04 (Affective Disorders) that "a medically determinable impairment is present that does not precisely satisfy the diagnostic criteria" (Tr. at 350).  Dr. Pilozos rated Claimant's degree of functional limitations involving activities of daily living as mild (Tr. at 357).  He found Claimant's functional limitations of maintaining social functioning; maintaining concentration, persistence or pace; and episodes of decompensation as non-existent.  Dr. Polizos's consultation notes state that Claimant lives with his girlfriend, feeds his hunting dogs, has no problems with personal care, prepares meals, washes dishes, vacuums, mows the lawn when he feels good, rides in a car, shops and handles money (Tr. at 359).  Dr. Polizos found "Claimant did not list any mental conditions which would affect his ability to work."

On July 10, 2010, James Binder, M.D., performed a Psychiatric Review of Claimant (Tr. at 381). In evaluating Listings 12.04 and 12.09,  Dr. Binder rated Claimant's degree of functional limitations involving activities of daily living and maintaining concentration, persistence or pace as mild (Tr. at 391).  He rated Claimant's functional limitations of maintaining social functioning as moderate.  (*Id.*)  Claimant did not experience any episodes of decompensation.  Dr. Binder's examiner comments state that Claimant appears partially credible (Tr. at 393).  Dr. Binder commented on the

inconsistencies in claimant's substance abuse history and "raises the possibility claimant was not fully forthcoming."

The ALJ held that Claimant did not experience any marked limitations in functioning (Tr. at 39). The ALJ found that Claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of Listings 12.04 and 12.09 (Tr. at 38).

Disorders of the Spine

Claimant went to the emergency room at Plateau Medical Center on March 29, 2008, with the chief complaint that his back went out and he fell to the floor (Tr. at 40, 268). Claimant reported he hurt his back 6 years prior and had experienced intermittent episodes since that time (Tr. at 265). Plateau Medical Center's Radiology Report dated March 29, 2008, states that five views of Claimant's lumbosacral spine were X-rayed. No evidence of compression fracture was shown (Tr. at 269). Plateau Medical Center's Patient Report stated Claimant's urine drug screen tested positive for opiates (Tr. at 270).

The ALJ evaluated the evidence and testimony provided concerning Claimant's chronic lumbosacral strain with disc bulges, under Section 1.04 of the Listings of Impairments. The ALJ held Claimant did not demonstrate any evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication as required to meet or equal the listing (Tr. at 38).

Digestive System

The ALJ evaluated Claimant's gastroesophageal reflux disease under Listings 5.00 and held that his condition is under control with medication and does not meet or equal the criteria of a listing. The ALJ also evaluated Claimant's history of hepatitis C in

8

remission under Listing 5.05 for chronic liver disease. (Id.) The ALJ held that no evidence on the record demonstrated that Claimant meets or equals the criteria of the listing. The ALJ stated, "In fact, the claimant's condition is in remission."

Credibility Determination

The ALJ must accompany his decision with sufficient explanation to allow a reviewing court to determine whether the Commissioner's decision is supported by substantial evidence. "[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of [his] decision a statement of the reasons for that decision." *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ's "decisions should refer specifically to the evidence in forming the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge . . . ." *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Substantial evidence supports the ALJ's finding that Claimant's alleged severity of symptoms was not credible. The ALJ held Claimant's statements concerning the intensity, persistence and limiting effects of his symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment (Tr. at 32). Between March 29, 2008, to October 4, 2012, Claimant sought treatment from multiple physicians for his alleged lower back pain. Claimant was treated or reviewed by Karen Hultman, DO; Nathan Doctry, M.D., Appalachian Regional Healthcare, Inc., Southern West Virginia Clinic; Dr. Hissan Nick Jafary, Beckley Psychiatric Service; Wadih Kabbara, M.D., Diplomate Board of Internal Medicine; and Narendra Parikshak, M.D., medical consultant. The ALJ concluded that the information in Claimant's treatment

records reflect poorly on his credibility (Tr. at 42). The treatment records illustrate the following:

- March 29, 2008
    - Claimant was treated at Plateau Medical Center's emergency room for complaint that his back went out and he fell to the floor. He reported that he hurt his back six years prior (Tr. at 265). Claimant was prescribed fifteen tablets of Flexeril 10mg, a muscle relaxant (Tr. at 266).
- April 29, 2008
    - Claimant was treated by Karen Hultman, DO. Claimant asserted that he injured his back 3-4 years prior[2] by lifting a "crib block" (Tr. at 316). Claimant was prescribed Skelaxin 800mg, a muscle relaxant (Tr. at 317). Dr. Hultman gave him samples of Ultram ER for pain.
- May 19, 2008
    - Claimant was treated by Dr. Hultman for back pain resulting from a slip and fall while walking his dog in the woods (Tr. at 309). Claimant was prescribed Darvocet for pain (Tr. at 311). His prescription for Skelaxin 800mg was refilled.
- June 12, 2008
    - Claimant was treated by Dr. Hultman regarding back pain. Again, Claimant was prescribed Darvocet 100mg for pain (Tr. at 305-306).
- June 16, 2008
    - Claimant was treated by Dr. Hultman. Claimant reported that the Darvocet was not helping relieve his back pain (Tr. at 302). Dr. Hultman prescribed Lortab 5/500mg, 1 tablet 3 times daily for ten days, for pain (Tr. at 303).
- June 26, 2008
    - Claimant called Dr. Hultman's office requesting a refill on Lortab (Tr. at 301). Dr. Hultman did not provide a prescription for Lortab.
- June 30, 2008
    - Claimant was seen by Dr. Hultman for his 2 week check-up (Tr. at 298). Dr. Hultman prescribed Lortab 5/500mg, 1 tablet 3 times daily for twenty days, for pain (Tr. at 299).
- July 29, 2008
    - Upon referral by Dr. Hultman, Claimant was seen by Nathan Doctry, M.D., at Appalachian Regional Healthcare, Inc., Southern West Virginia Clinic

---

[2] Claimant filed his applications for disability benefits on July 7, 2009, alleging disability beginning March 29, 2008. However, on March 29, 2008, Claimant reported to Plateau Medical Center that he hurt his back six years prior (Tr. at 265). One month later, on April 29, 2008, Claimant reported to Dr. Hultman that he hurt his back 3-4 years prior (Tr. at 316).

    (Tr. at 282). Claimant reported to experiencing lower back pain after "lifting something very heavy" approximately four months prior.
- Claimant's pharmacy called Dr. Hultman's office because Claimant had filled a Lortab 5/500mg prescription from Dr. Hultman on July 19, 2008, then attempted to get a prescription for Lortab 7.5/500mg from Dr. Doctry filled. The pharmacy called Dr. Hultman stating it needed an override from her in order for Claimant to get his prescription for Lortab 7.5/500mg from Dr. Doctry filled (Tr. at 296).

- August 12, 2008
  - Claimant called Dr. Hultman's office claiming he needed a refill for Lortab to be called into the pharmacy because "Dr. Doctry will not fill it again until his appt. with him" (Tr. at 293). The office staff made the earliest appointment available with Dr. Hultman, two days following the phone call. "[Claimant] was upset that he could not get in until Thursday and demanded his medication. He then hung up the phone on [the office staff]."
  - Claimant called to cancel the scheduled appointment with Dr. Hultman's Office (Tr. at 294). When office staff tried to reschedule him, he asked "can't they just be called in?" Office staff informed Claimant he needed to be seen by Dr. Hultman to receive a Lortab prescription refill. Claimant responded by stating "Don't worry about it. I'll just change doctors. You all don't want to f!@#$% help." The office staff looked up Claimant on the Drug Enforcement Agency's website. It revealed that Claimant received a prescription for Lortab 7.5/500mg on August 1, 2008, for one month's supply from Dr. Doctry. (*Id.*)

- August 14, 2008
  - Claimant came to Dr. Hultman's office seeking refills on Lortab. Office staff informed him that Dr. Hultman would need to refill his Lortab prescription. Claimant "did not wish to continue with the exam" (Tr. at 292). Claimant requested a follow-up appointment with Dr. Hultman.

- August 15, 2008
  - Dr. Hultman's office staff noted that Claimant's girlfriend had called "several times to see about his Lortab" (Tr. at 291). Claimant was prescribed 5/500mg Lortab three times a day for 15 days.

- August 21, 2008
  - Dr. Hultman wrote Claimant a letter to notify him that due to his noncompliance with her practice policies on pain medication and prescriptions for them, he was legally released from Dr. Hultman's care (Tr. at 323).

11

- September 23, 2008
    - Wadih Kabbara, M.D., Diplomate Board of Internal Medicine, began treating Claimant for chronic back pain (Tr. at 440). Dr. Kabbara's plan included continuing Claimant on his current prescriptions.
- September 26, 2008
    - Although Claimant's next scheduled follow-up appointment with Dr. Kabbara was in October, Claimant went to the office early, on September 26, 2008, asserting that Dr. Kabbara was supposed to put him on pain medication (Tr. at 439). Claimant was given a prescription for Norco 7.5mg for pain.
- October 28, 2008
    - Claimant had a follow-up appointment with Dr. Kabbara regarding lab work. Claimant reported experiencing pain (Tr. at 438). Dr. Kabbara prescribed Claimant a refill on Norco.
- November 25, 2008
    - Claimant had a follow-up appointment with Dr. Kabbara to get medications refilled for his lower back pain (Tr. at 437). Claimant was prescribed "Hydrocodone without Tylenol" for pain.
- January 5, 2009
    - Claimant had a follow-up appointment with Dr. Kabbara to get medications refilled for his lower back pain. Claimant reported that he feels better with Hydrocodone (Tr. at 436). Dr. Kabbara prescribed Hydrocodone without Tylenol for Claimant's back pain.
- February 5, 2009
    - Claimant saw Dr. Kabbara for refills on his medications and "for a general physical for disability" (Tr. at 435). Claimant's prescription for Hydrocodone without Tylenol was refilled.
- March 5, 2009
    - Claimant saw Dr. Kabbara regarding his lower back pain. Dr. Kabbara prescribed Hydrocodone without Tylenol 7.5mg for Claimant's lower back pain (Tr. at 434).
- April 8, 2009
    - Claimant saw Dr. Kabbara for his lower back pain. Claimant was prescribed Hydrocodone without Tylenol 7.5mg (Tr. at 433).
- May 28, 2009
    - Claimant saw Dr. Kabbara for a refill on his medications. Claimant was prescribed Norco 7.5mg for pain (Tr. at 432).
- July 7, 2009
    - Claimant applied for DIB and SSI.

- September 29, 2009
    - Claimant was treated by Dr. H. A. Jafary, Beckley Psychiatric Service (Tr. at 361-364). Claimant informed Dr. Jafary that he takes pain pills and THC[3] (Tr. at 361).
- October 5, 2009
    - During a Mental Status Examination with West Virginia Disability Determination Service, Claimant reported that he believes his back problems are a result from bouncing up and down while working in a rock crusher. Claimant reported that he has been clean from crack cocaine for two years (Tr. at 331-335).
- October 22, 2009
    - During a Physical Residual Functional Capacity Assessment for his disability applications, Claimant was assessed by Narendra Parikshak, M.D., medical consultant. Dr. Parikshaki found that "Claimant's symptoms are partially credible" (Tr. at 343). Dr. Parikshak found that Claimant lives with his girlfriend, feeds his hunting dogs, has no problems with personal care, prepares meals, washes dishes, vacuums, mows when he feels good, rides in a car and shops (Tr. at 345).
- March 23, 2010
    - Claimant saw Dr. Kabbara with complaints of a mass in his right forearm. Dr. Kabbara refilled Claimant's prescription of Norco 7.5mg for pain and prescribed a 30 day supply of Lithium Carbonate 450mg with 11 refills (Tr. at 422).
- May 19, 2010
    - Claimant told Dr. H. A. Jafary, Beckley Psychiatric Service, that he was "doing okay" (Tr. at 444). Claimant "was given Lithium CR 450 pro bid #60."
- August 24, 2010
    - Claimant saw Dr. Kabbara for a follow-up visit. Dr. Kabbara reported that Claimant continues to have lower back pain that is "well controlled with pain medications" (Tr. at 400). Dr. Kabbara prescribed a 30 day supply of Lortab 10/325mg.
- September 23, 2010
    - Claimant saw Dr. Kabbara for a follow-up visit. Claimant reported that he works as a mechanic[4] and the pain medication for his back allows him to be able to work (Tr. at 403). Dr. Kabbara prescribed a 30 day supply of Lortab 10/325mg.

---

[3] THC stands for Tetrahydrocannabinol.

[4] Although Claimant asserts a disability onset date of March 29, 2008, he informs Dr. Kabbara in September 2010, that he is working as a mechanic. Claimant further informs Dr. Kabbara that a prescription for Lortab helps relieve his back pain to enable him to work (Tr. at 403).

13

- October 25, 2010
    - Claimant saw Dr. Kabbara for a follow-up visit regarding his lower back pain (Tr. at 447). Claimant reported that he had applied for disability benefits. Claimant reported that he does not do illicit drugs. Dr. Kabbara refilled Claimant's prescription of Norco 7.5mg for pain. Dr. Kabbara stated that the Norco helps Claimant with his daily functional status to be able to do the basic activities (Tr. at 449).
- November 18, 2010
    - Claimant saw Dr. Kabbara for a follow-up visit. Claimant reported that he fell while hunting and hurt his neck. He reported that he went to Plateau Medical Center and that the pain is better with the prescription Flexeril (Tr. at 450). Dr. Kabbara refilled Claimant's prescription for Norco 7.5mg (Tr. at 452).
- January 18, 2011
    - Dr. Jafary's assessment states that Claimant had "received his Medicaid again and would like to go back to the medication he was previously on" (Tr. at 445). Claimant reported to Dr. Jafary that "he is doing pretty well and is controlling his mood with marijuana." Dr. Jafary's plan for Claimant's treatment included Zyprexa 5mg, an antipsychotic, and "Lithium CR 450 pro bid #60."
- February 27, 2011
    - Claimant saw Dr. Kabbara for a follow-up visit and reported that his back pain is well controlled with pain medicine (Tr. at 453). Dr. Kabbara refilled Claimant's prescription for Lortab 10mg (Tr. at 455).
- March 22, 2011
    - Claimant saw Dr. Kabbara for a follow-up visit. Dr. Kabbara noted Claimant was to "continue Norco same dose" (Tr. at 458).
- April 19, 2011
    - Claimant saw Dr. Kabbara for a follow-up visit. Dr. Kabbara noted Claimant was to "continue Norco same dose" (Tr. at 461).
- April 20, 2011
    - Claimant informed Dr. Jafary that he was "cutting down on his use of marijuana" (Tr. at 446). Claimant reported that he has been dependent on THC. Claimant "was given Lithium CR 450 pro bid #60" and Zyprexa 5mg.
- April 27, 2011
    - Claimant went to the emergency room at Plateau Medical Center with complaints of chest pain (Tr. at 470). Claimant reported he was chasing his dog for approximately a mile. Claimant reported that he drinks 2 beers a day. He reported that he quit THC approximately 10 days prior. He

    stated that he had several years of crack abuse which he reported to quitting 5 years prior.
- May 11, 2011
    - Claimant saw Dr. Kabbara for a follow-up visit regarding his back pain (Tr. at 462). Claimant's plan stated he was to "continue Norco same dose" (Tr. at 464).
- June 8, 2011
    - Claimant saw Dr. Kabbara regarding his lower back pain. Claimant reported that pain medication helps a lot with functional status (Tr. at 465). Claimant's plan stated he was to "continue Norco same dose" (Tr. at 467).
- June 28, 2011
    - Claimant was seen by Dr. Kabbara regarding his lower back pain. Claimant stated that the pain had worsened over the prior few weeks (Tr. at 493). Dr. Kabbara prescribed Lortab 10mg taken 4 times daily for 30 days. Dr. Kabbaea increased Claimant's prescription from Norco 7.5mg to Norco 10mg (Tr. at 495).
- July 20, 2011
    - Claimant saw Dr. Kabbara for a follow-up visit. Claimant reported that he was applying for disability benefits and inquired as to "what he can or cannot do" (Tr. at 496).[5] Claimant stated he experiences significant pain in his back that worsens when he uses stairs, reaches upward and lifts heavy objects. Dr. Kabbara's plan for Claimant stated "continue to take pain medications" (Tr. at 498).
- July 26, 2011
    - Claimant informed Dr. Kabbara during a follow-up visit regarding his lower back pain that the pain medicine helps most of his functional status (Tr. at 499). Claimant prescription of Norco 10mg was refilled (Tr. at 500).

  The ALJ concluded that the objective findings do not support the limitations alleged by Claimant and revealed he is only partially credible regarding the severity of his complaints (Tr. at 40). The ALJ gave the opinion evidence of Wahid Kabbara, M.D., little weight as it was not supported by his own treatment notes that consistently state Claimant's conditions "are well controlled" (Tr. at 44). Further the ALJ reviewed the

---

[5] Claimant applied for disability benefits on July 7, 2009, alleging disability beginning March 29, 2008. Claimant informed Dr. Kabbara that he was applying for disability and inquired as to what he can or cannot do during a follow-up visit on July 20, 2011. Claimant's administrative hearing was held on July 27, 2011.

15

entire record and held that the information in Claimant's treatment records with Dr. Hultman's office "reflect poorly on the claimant's credibility as it appears he was discharged from the practice of Dr. Hultman due to being noncompliant with her practice policies on pain medications" (Tr. at 42). As the fact-finder, the ALJ has the exclusive responsibility for making credibility determinations. *See, Shively v. Heckler*, 739 F.2d 987, 989-990 (4th Cir. 1984) (stating that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight").

Vocational Expert's Testimony

At the administrative hearing, the ALJ asked the Vocational Expert (hereinafter VE) if jobs existed in significant numbers in the national economy that someone with Claimant's age, education, past relevant work and previously stated exertional limitations could perform (Tr. at 70-73). The VE testified that such a person could perform light unskilled sedentary jobs including an assembler, hand packer and product inspector (Tr. at 72). Based on the VE's testimony, the ALJ ruled that Claimant could perform work in the national economy, and therefore, he was not disabled under the Act (Tr. at 47). Pursuant to SSR 00-4p[6], VE Thomas' testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Conclusion

The ALJ's decision was issued on August 3, 2011. The ALJ found that Claimant's impairment does not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Substantial evidence supports the determination of

---

[6] Social Security Ruling 00-4p: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions.

the ALJ. Contrary to Claimant's assertions that the ALJ failed to consider his impairments in combination, the ALJ's decision reflects an adequate consideration of his impairments. The ALJ appropriately weighed the evidence of record in its entirety to determine that Claimant failed to demonstrate that his functional capabilities preclude his ability to perform any substantial gainful activity. The ALJ fully complied with his duty consistent with 20 C.F.R. § 404.1523 (2013). Accordingly, the ALJ denied Claimant's applications for DIB and SSI under the Social Security Act.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, Claimant's Brief in Support of Judgment on the Pleadings is DENIED, Defendant's Brief in Support of Defendant's Decision is GRANTED, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this Court.

The Clerk of this Court is directed to provide copies of this Order to all counsel of record.

**Enter: March 18, 2014.**

Dwane L. Tinsley
United States Magistrate Judge